IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NADIA ROVER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 25-0485-WS-M |
| | ) |
| COMMONWEALTH HOTELS INC., | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss.  (Doc. 6).
The plaintiff has filed a response and the defendant a reply, (Docs. 8, 9), and the motion
is ripe for resolution.  After careful consideration, the Court concludes the motion is due
to be granted in part and denied in part.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiff was employed by the defendant
as a housekeeper.  On or about June 15, 2024,[1] a male co-employee asked the plaintiff if
she would "come up here at night," and he offered to pay her for sex.  The plaintiff
reported the incident to her supervisor, who said she would handle it.  The supervisor
stated that the co-employee had made sexual comments to other female employees and
had run off multiple female employees.  On or about July 11, the co-employee
approached the plaintiff, addressed her as "sexy Shay," and said he was wondering if he
could "eat that thing," a euphemism for oral sex with the plaintiff.  The plaintiff reported
the incident and provided a written statement.  The defendant failed or refused to take
reasonable action in response to the plaintiff's complaints.  On July 14, after receiving

---

[1] Unless otherwise noted, all dates herein are 2024.

threats from the co-employee's family members, and with no action by the defendant in response to her complaints, the plaintiff resigned.  (*Id*. at 3-4).

The complaint asserts six causes of action:

- Count I      Title VII (hostile work environment)
- Count II     Title VII (constructive discharge)
- Count III    invasion of privacy
- Count IV     outrage
- Count V      negligent and/or wanton supervision
- Count VI     negligent and/or wanton retention

(Doc. 1 at 4-13).

## DISCUSSION

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Caldwell v. Kimberly-Clark USA, LLC*, 783 F. Supp. 3d 1367, 1377 (S.D. Ala. 2024) (internal quotes omitted).  "The Court applies the same rule to motions to dismiss and accordingly limits its review to those arguments the parties have expressly advanced." *Parker v. Exterior Restorations, Inc*., 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023); *accord Caldwell*, 783 F. Supp. 3d at 1377.  "Moreover, a passing reference to an issue in a brief is insufficient to properly raise that issue." *Id*. (internal quotes omitted).

### I. Hostile Work Environment.

To prove a hostile work environment, the plaintiff must show

(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc*., 594 F.3d 798, 808 (11th Cir. 2010) (internal quotes omitted).  The defendant challenges only the fourth element.  (Doc. 6 at 4-6).

"Determining whether the harassment was sufficiently severe or pervasive involves both an objective and a subjective component." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008).  The defendant challenges only the objective component.

"In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann*, 526 F.3d at 1378 (11th Cir. 2008).

According to the defendant, the complaint "identifies only two isolated, vague comments by a coworker occurring at least a month apart."  (Doc. 6 at 5).  According to the defendant, the complaint "[a]t most ... describes isolated incidents of rude or inappropriate behavior."  (*Id.*).  The Court is not so sure.

The defendant would limit the landscape to two incidents.  The complaint, however, also alleges that the plaintiff's supervisor told her that the co-employee had made sexual comments to other female employees, to the extent he had run off more than one of them.  In assessing whether a plaintiff satisfies the objective component of the fourth element, courts are not to consider the alleged harassment of other employees if the plaintiff was unaware of such incidents.  *Adams v. Austal, U.S.A., L.L.C*., 754 F.3d 1240, 1250 (11th Cir. 2014).  The converse would seem to be that a court is to consider the harassment of other employees of which the plaintiff was aware.  *Melton v. I-10 Truck Center, Inc*., 166 F.4th 905, 918 (11th Cir. 2026) (en banc) ("An environment may be unlawfully hostile even if the [sexual] remarks were not directed at [the plaintiff].") (internal quotes omitted).  The defendant has addressed neither this principle nor the complaint's allegations regarding the harassment of other female employees of which the plaintiff was made aware during her employment.

The two specific incidents, as the defendant notes, occurred approximately four weeks apart.  While weekly incidents have been deemed frequent and bimonthly

3

incidents infrequent, these precedents "establish no 'magic number' of instances of harassment sufficient to qualify as frequent." *Copeland v. Georgia Department of Corrections*, 97 F.4th 766, 776 (11th Cir. 2024). The defendant assumes rather than establishes that two instances within a month is insufficiently frequent. Nor does the defendant address how the information the plaintiff received during this period regarding the co-employee's harassment of other female employees plays into the frequency analysis.

Similarly, the defendant simply assumes that crude, direct propositions for intercourse and oral sex are merely "rude or inappropriate," not severe, without any demonstration that governing caselaw supports its position. The defendant likewise assumes that such propositions are merely offensive utterances, without citing any precedent finding such conduct not threatening or humiliating.

On the limited briefing and authority the defendant provides, the Court cannot conclude that the complaint fails to state a claim under Title VII for hostile work environment.

## II. Constructive Discharge.

"Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces [her] to quit [her] job." *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009) (internal quotes omitted). "A plaintiff must show the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." *Id*. (internal quotes omitted).

Count II alleges that the co-employee's propositions, the plaintiff's awareness that this was part of a history and continuing pattern of which the defendant was aware but had failed to remedy, the defendant's continued failure to address the ongoing harassment despite the plaintiff's complaints, and threats levied against her by the co-employee's family members, created a work environment no reasonable person could endure. (Doc. 1 at 7-8).

4

The defendant calls these allegations vague and conclusory and demands that the plaintiff explain *how* these circumstances made her work situation intolerable.  (Doc. 6 at 6).  The defendant offers no authority compelling the plaintiff to do so on pain of dismissal, and the connection would appear self-evident.  It would be open to the defendant to argue, with legal support, that the circumstances the plaintiff describes are legally incapable of supporting a constructive discharge claim, but it has not done so.

The defendant quite reasonably questions whether the plaintiff can rely on threats from the co-employee's family members to establish an intolerable work environment, (Doc. 6 at 7),[2] but it fails to show that the remainder of the complaint's allegations are insufficient of themselves to state a claim.

The defendant argues the complaint alleges no facts supporting an inference that the defendant "deliberately" made the plaintiff's working conditions intolerable.  (Doc. 6 at 7).  In doing so, it ignores the allegations:  that the defendant, through the plaintiff's supervisor, has admitted awareness of the co-employee's history of sexually harassing female employees until they quit; that the defendant has obviously failed to successfully address the problem of which it was aware; and that it likewise failed to do anything about the plaintiff's recent complaints of sexual harassment.  Perhaps a coherent argument could be made that such circumstances do not support an inference of deliberateness, but the defendant has not made it.

On the limited briefing and authority the defendant provides, the Court cannot conclude that the complaint fails to state a claim under Title VII for constructive discharge.

## III.  Invasion of Privacy.

Count III alleges that the plaintiff's co-employee invaded her privacy by making "multiple sexual comments and requests for Plaintiff to engage in sexual activities with" him, for which conduct the defendant is said to be liable by means of ratification.  (Doc.

---

[2] The complaint does not allege that the family members were also employees or that the threats were made within the work environment.

1 at 9).  The defendant argues that the alleged conduct cannot support an invasion of privacy claim under Alabama law.  (Doc. 6 at 7-9).  The Court agrees.

"To succeed on a claim alleging invasion of privacy relating to sexual harassment, a plaintiff must show:  (1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation."  *Ex parte Atmore Community Hospital*, 719 So. 2d 1190, 1194 (Ala. 1998).

"[A]sking a co-employee for a date and making sexual propositions usually do not constitute an invasion of privacy ...."  *Ex parte Atmore*, 719 So. 2d at 1194; *accord McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 652 (Ala. 1986) ("Even the dire affront of inviting an unwilling woman to illicit intercourse has been held by most courts to be no such outrage as to lead to liability" for invasion of privacy) (internal quotes omitted); *Baldwin v. Blue Cross/Blue Shield, Inc.*, 480 F.3d 1287, 1294-95, 1308-09 (11th Cir. 2007) (supervisor's conduct, which included inviting the plaintiff to stay in his hotel room, showing up at her front door uninvited to take her cruising and drinking, asking her to "blow me," and twice unzipping his pants at her desk, did not support an invasion of privacy claim under Alabama law).  As this Court has ruled, a man's statement that he "wanted to ride [the plaintiff] like some kind of animal" is "at most an inept request for sexual favors" and thus "an insufficient basis for liability in light of *McIsaac*."  *Burden v. International Longshoremen's Association, Local No. 1410*, 510 F. Supp. 2d 618, 629 (S.D. Ala. 2007).

The defendant relies on *McIsaac* and *Ex parte Atmore*.  The plaintiff offers no relevant response.  Based on the allegations of the complaint and the authorities cited above, it is clear that the complaint fails to state a viable claim for invasion of privacy under Alabama law.

## IV.  Outrage.

"The elements of the tort of outrage are (1) that the defendant either intended to inflict emotional distress, or knew or should have known that emotional distress was

6

likely to result from its conduct; (2) that the defendant's conduct was extreme and outrageous; and (3) that the defendant's conduct caused emotional distress so severe that no reasonable person could be expected to endure it." *Jackson v. Alabama Power Co.*, 630 So. 2d 439, 440 (Ala. 1993); *accord Stabler v. City of* Mobile, 844 So. 2d 555, 560 (Ala. 2002).  The defendant challenges only the second element.  (Doc. 6 at 9-11).

While the tort of outrage "is an extremely limited cause of action," it may be found in circumstances of "egregious sexual harassment." *Wilson v. University of Alabama Health Services Foundation, P.C.*, 266 So. 3d 674, 677 (Ala. 2017) (internal quotes omitted).  The defendant, relying on two cases that did not involve sexual harassment, argues that the plaintiff's allegations do not meet this standard.  (Doc. 6 at 10).  The Court declines to remedy the deficiency in the defendant's briefing.  The Court also notes that Count IV appears to be based, not just on the co-employee's requests for sexual favors but on the defendant's failure -- despite its knowledge of the co-employee's history of such behavior and its effect on other female employees -- to correct his conduct either before or after the plaintiff complained about it.  (Doc. 1 at 11).

The plaintiff argues that her claim is also viable under a separate, "public policy" category of outrageous conduct.  (Doc. 8 at 10).  She relies on *Lees v. Sea Breeze Health Care Center, Inc.*, 391 F. Supp. 2d 1103 (S.D. Ala. 2005), in which this Court concluded that Alabama law would recognize grounds for an outrage claim if the wrongful action is a termination and the reason for the termination contravenes public policy.  *Id.* at 1107-08.  The defendant's one-sentence response, (Doc. 9 at 9 n.1), is too thin to demonstrate the plaintiff cannot succeed under this theory.

On the limited briefing and authority the defendant provides, the Court cannot conclude that the complaint fails to state a claim for outrage.

## V.  Negligent Employment.

As this Court and many others have recognized, a claim for negligent or wanton hiring, training, supervision, or retention "requires a showing that ... the employee committed a tort recognized under Alabama law ...." *James v. Nationstar Mortgage,*

*LLC*, 92 F. Supp. 3d 1190, 1200 (S.D. Ala. 2015) (internal quotes omitted).  Because Counts V and VI reference "sexual harassment," (Doc. 1 at 12-13), the defendant concludes that they limit the underlying wrong to violations of Title VII, to the exclusion of any Alabama tort.  (Doc. 6 at 11-12).  As the defendant's own briefing acknowledges, (Doc. 6 at 10), however, a claim for outrage can be based on "egregious sexual harassment," so Counts V and VI extend at least as far as the plaintiff's state-law outrage claim.

In its reply brief, the defendant presents a new argument:  that Counts V and VI must fail because Counts III and IV fail.  (Doc. 9 at 10).  The defendant's argument comes too late to be considered;[3] in any event, and as discussed in Part IV, Count IV has not yet failed.

## VI.  Leave to Amend.

The plaintiff requests leave to amend her complaint to address any deficiencies. (Doc. 8 at 11).  The defendant opposes amendment, on the grounds the plaintiff has filed no motion seeking such relief and either setting forth the substance of the proposed amendment or attaching a copy of the proposed amended pleading.  (Doc. 9 at 11).

The only claim dismissed by this order is Count III, for invasion of privacy. Although, as reflected in the Court's discussion of this claim, it seems unlikely that the plaintiff can add sufficient allegations to present a viable claim for invasion of privacy, nothing in this order precludes the plaintiff from attempting to do so upon proper motion.

---

[3] "District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Parker v. Exterior Restorations, Inc.*, 653 F. Supp. 3d 1105, 1108 (S.D. Ala. 2023).  "Unless the offending party articulates an adequate reason for its failure to present in its principal brief an argument then available to it, the Court will not grant relief based on arguments first raised in reply." *Id.*[3]  The defendant offers no explanation for its failure to assert this argument in its principal brief.

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is **granted** with respect to Count III and is in all other respects **denied**. Count III is **dismissed with prejudice**.

DONE and ORDERED this 31st day of March, 2026.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE